UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| William Shane LaFoy, | ) | Civil Action No.: 0:19-cv-01142-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court following the issuance of a Report and Recommendation

("R&R") by United States Magistrate Judge Paige J. Gossett.[1]  Plaintiff, William Shane LaFoy,

brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a

final decision of the Commission of Social Security ("the Commissioner") denying is claims for

Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  The Magistrate Judge

recommended affirming the Commissioner's decision denying Plaintiff's claim for benefits.

### FACTUAL FINDINGS AND PROCEDURAL HISTORY

Plaintiff applied for DIB on October 16, 2016 and SSI on March 13, 2018.  In both

applications for benefits, Plaintiff alleged disability beginning August 30, 2016.  Plaintiff's claims

were denied initially and on reconsideration.  Plaintiff then requested a hearing before an

administrative law judge ("ALJ").  A hearing was held before the ALJ on January 22, 2019.

Plaintiff, represented by an attorney, appeared and testified.  A vocational expert also testified.  The

---

[1]     This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule
73.02(B)(2).

ALJ issued a decision on February 19, 2019, finding that Plaintiff was not disabled. The ALJ's

findings are as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 21, 2021.

2. The claimant has not engaged in substantial gainful activity since August 30, 2016, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: carpal tunnel syndrome, disorder of the spine, post-traumatic stress disorder (PTSD); depressive disorder, and cannabis use disorder (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant is limited to occasionally climbing ramps and stairs. The claimant should never climb ladders, ropes, and scaffolds. The claimant can occasionally stoop, kneel, crouch, crawl, and balance. The claimant is limited to frequent handling (gross manipulation) bilaterally and frequent fingering (fine manipulation of items no smaller than the size of a paperclip) bilaterally. The claimant must avoid all exposure to extreme cold (such as in a freezer), extreme heat (such as in a very hot factory or plant), unprotected heights, and hazardous machinery. The claimant is limited to simple, routine, one to three task work with only

2

> brief and superficial interaction with the public and only occasional interaction with coworkers and supervisors.

6.   The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7.   The claimant was born on July 3, 1979 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 C.F.R. 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569a, 416.969 and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from August 30, 2016, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

[ALJ Decision, ECF No. 10-2, at 21-34].

The ALJ's finding became the final decision of the Commission when the Appeals Council denied Plaintiff's request for further review on April 9, 2019. Plaintiff filed this action on April 18,

3

2019, seeking judicial review of the Commissioner's decision. [Compl., ECF #1]. Both Plaintiff and the Commissioner filed briefs, [ECF ##17, 19, and 20]. The Magistrate Judge issued her Report and Recommendation ("R&R") on May 18, 2020, recommending that the Commissioner's decision be affirmed. [R&R, ECF #22]. Plaintiff filed timely objections to the R&R on May 29, 2020. [Plaintiff's Objections, ECF #23]. The Commissioner filed a response to Plaintiff's objections on June 12, 2020. [Defendant's Response to Plaintiff's Objections, ECF #24].

## STANDARD OF REVIEW

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The

4

Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure

that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is

rational." *Vitek*, 438 F.2d at 1157-58.

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's

recommendation has no presumptive weight, and the responsibility to make a final determination

remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a

de novo review of those portions of the R & R to which specific objections are made, and it may

accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or

recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report

to which objections have been filed. *Id.* However, the Court need not conduct a de novo review

when a party makes only "general and conclusory objections that do not direct the [C]ourt to a

specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v.

Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the

Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th

Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's

recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## APPLICABLE LAW

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether he is

under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last

5

for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. Preston v. Heckler, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform her customary occupation as the result of physical or mental impairments. See Taylor v. Weinberger, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. 20 C.F.R. §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform her previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. 20 C.F.R. §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential

questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing past relevant work;[3] and (5) whether the impairment prevents her from doing substantial gainful activity. See 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward

---

[2]    The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish her impairment is disabling at Step 3).

[3]    In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

7

with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## ANALYSIS

Plaintiff's appeal from the ALJ's decision denying his claim for benefits concerns the ALJ's evaluation of the opinion evidence from two nurse practitioners who examined Plaintiff, Judith Zink, N.P. and Christopher Brown, N.P. Zink and Brown opined that Plaintiff was permanently disabled and unable to work due to his depression, anxiety, emotional instability, PTSD, and agoraphobia following an incident at work involving the death of two young children. Tr. 400, 430, 442, 496.

The ALJ assigned little weight to Zink and Brown's opinions "because opinions regarding a claimant's ability to work are administrative findings that . . . are reserved to the Commissioner." [ALJ Decision, ECF No. 10-2 at 31]. The ALJ also noted that Zink and Brown were not acceptable medical sources. *Id.* Finally, the ALJ stated Zink and Brown's opinions were inconsistent with the overall record because treatment records mentioned Plaintiff exhibited normal mood and affect, normal behavior, and normal thought content and listed Plaintiff's mental impairments as stable. *Id.*

Plaintiff argues the ALJ failed to properly assess the opinions of Zink and Brown and erred by not qualifying Zink and Brown as acceptable medical sources. The Magistrate Judge disagreed with Plaintiff's arguments and found that Plaintiff had failed to demonstrate that the ALJ's decision to assign little weight to Zink and Brown's opinions was not supported by substantial evidence.

In his objections to the Magistrate Judge's R&R, Plaintiff disputes the Magistrate Judge's conclusion and argues the medical records do not support the Magistrate Judge's statement that the majority of Plaintiff's medical records from his treating sources reflected normal "behavior, thought processes, concentration, and judgment." The Magistrate Judge stated:

> [T]he ALJ's decision reflects specific consideration of the records [from Zink and Brown] cited by LaFoy, and the ALJ, in fact, specifically acknowledged that in these records Lafoy "reported continued symptoms including suicidal ideation, [but] his overall mood appeared stable. Other than abnormal mood and affect, the claimant's mental status exams results appeared normal. Further, as pointed out by the Commissioner, the findings by LaFoy's treating sources in the majority of these records reflected normal "behavior, thought processes, concentration, and judgment."

[R&R, ECF No. 22 at 10-11].

The Court has thoroughly reviewed Plaintiff's medical records. While the records indicate that Plaintiff continued to report issues with depression and anxiety, Plaintiff's mental status exams generally indicated normal behavior, thought processes, concentration, and judgment.

On August 22, 2016, Brown noted that Plaintiff was nervous, anxious, had insomnia, was positive for depression and memory loss, negative for substance abuse and suicidal ideas. Brown observed Plaintiff's thought processes were intact and he was appropriately dressed. Tr. 362.

On August 29, 2016, Plaintiff visited Brown again complaining of worsening insomnia with nightmares. Brown noted that Plaintiff was positive for depression, negative for hallucinations,

memory loss, substance abuse, and suicidal ideas. Plaintiff was nervous/anxious and had insomnia. Tr. 365. However, Plaintiff's mood, memory, affect, and judgment were normal. Tr. 366.

Nurse practitioner Brown referred Plaintiff to a psychiatrist, Dr. Joseph Friddle, for management of his anxiety and depressive symptoms. Tr. 428. On September 2, 2016, Dr. Friddle noted Plaintiff's mood was dysphoric and anxious. Tr. 429. However, his concentration and focus were normal, judgment and insight were average, and his thought processes were logical. *Id*.

On March 21, 2017, Brown observed that Plaintiff was positive for depression and negative for hallucinations, memory loss, substance abuse, and suicidal ideas. Tr. 384. Plaintiff appeared nervous/anxious and had insomnia. *Id*. Brown found that Plaintiff's memory and judgment were normal. *Id*.

Plaintiff participated in a psychological consultative exam on June 16, 2017, with Rebecca L. Sorrow, PhD. Tr. 395. Plaintiff reported difficulties with intrusive memories, depressed mood, anxiety, sleep disturbances, and deficiencies in concentration. Tr. 396. Dr. Sorrow observed that Plaintiff's thought processes appeared to be intact and the content of his speech was reality based. *Id*. Dr. Sorrow noted there was no evidence of psychosis or delusional thinking and Plaintiff denied current or past suicidal ideation. *Id*. Dr. Sorrow recorded a GAF score of 58. Tr. 397.

A mental status exam conducted as part of an initial clinical assessment for Piedmont Mental Health on July 12, 2017 noted Plaintiff's attitude was cooperative, his behavior was calm, affect was appropriate, speech was normal, and thought processes were logical and goal directed. Tr. 406. His mood, however, was depressed, angry, and anxious. *Id*. Plaintiff's judgment and insight were good; he was able to make sound decisions and concentrate. Tr. 407.

On August 10, 2017, during his initial psychiatric evaluation, Dr. Justin Zeppieri noted that Plaintiff was well-groomed, his attitude was cooperative, his behavior was calm, and his thought processes were logical and goal directed. Tr. 410. Plaintiff reported suicidal ideation without a plan. *Id*. Plaintiff's mood was depressed and anxious. *Id*. His affect was appropriate and his memory, attention, and concentration were intact. *Id*. Dr. Zeppieri also observed fair insight and judgment. *Id*. Dr. Zeppieri diagnosed Plaintiff with PTSD and substance use disorder. *Id*.

On September 7, 2017, Dr. Zeppieri observed that Plaintiff was well-groomed, cooperative, and calm. Tr. 412. He noted that Plaintiff suffers from chronic suicidal ideation but was able to contract for safety. Tr. 413. Plaintiff's judgment and insight were good and his memory, concentration, and attention were all intact. *Id*.

At his one week follow-up appointment on September 14, 2017, Plaintiff denied suicidal ideation. Tr. 414. Plaintiff's mood was depressed and angry but his judgment was fair, insight was good, and thought processes were logical and goal directed. *Id*.

Plaintiff saw Dr. Zeppieri again on September 28, 2017, for a follow-up appointment for medication management. Tr. 416. Plaintiff's attitude was cooperative and his behavior was calm. *Id*. Plaintiff's thought processes were logical and goal directed. *Id*. Plaintiff denied suicidal ideation. *Id*. Plaintiff's mood was irritable but his judgment and insight were good. *Id*.

On October 19, 2017, Plaintiff's mental status exam indicated a cooperative attitude and calm behavior. Tr. 419. Plaintiff's thought processes were logical and goal directed. *Id*. Plaintiff denied active suicidal ideation. Tr. 418. Plaintiff's mood was depressed and anxious. Tr. 419. His memory, attention, and concentration were intact and his judgment and insight were good. *Id*. Dr.

11

Zeppieri changed Plaintiff's primary diagnosis from PTSD to major depressive disorder, recurrent episode, moderate. *Id*. Plaintiff was also diagnosed with PTSD and substance abuse disorder. *Id*.

On November 16, 2017, Plaintiff visited Dr. Zeppieri for a follow-up medication management appointment. Tr. 420. Plaintiff reported ongoing suicidal ideation with no specific plan or desire to end his life. Tr. 421. Plaintiff's thought processes were logical and goal directed. *Id*. Plaintiff's attitude was cooperative and behavior was calm. *Id*. Plaintiff's mood was depressed and anxious. *Id*. His memory, attention, and concentration were intact and his judgment and insight were good. *Id*.

Plaintiff saw Dr. Zeppieri again on February 8, 2018, March 22, 2018, May 24, 20018, and October 22, 2018. Tr. 422-427, 434-436. On each of these dates, despite presenting with anxious and depressed mood, Dr. Zeppieri observed that Plaintiff's thought processes were logical and goal directed, his behavior was calm, memory and concentration were intact, and judgment was either good or fair. Tr. 422, 425-426.

The record before the Court does not support a finding of disability. As noted by the Magistrate Judge, the majority of medical records from Plaintiff's treating sources reflect normal "behavior, thought processes, concentration, and judgment." Accordingly, substantial evidence supports the ALJ's decision to afford little weight to Zink and Brown's opinions. Plaintiff's objection is overruled.

Plaintiff also contends the ALJ erred when he failed to qualify Zink and Brown as acceptable medical sources. However, pursuant to the regulations that were in effect at the time Plaintiff's claim was filed, nurse practitioners were not considered acceptable medical sources. *See* SSR 06-03p; *cf*. 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7) (eff. Oct. 15, 2018) (including licensed

12

advanced practice nurses as acceptable medical sources for impairments within their licensed scope of practice only "with respect to claims filed . . . on or after March 27, 2017"). The ALJ specifically considered Zink and Brown's opinions and gave sufficient reasons for assigning those opinions little weight, regardless of whether they were deemed "acceptable medical sources" rather than simply "other sources." Plaintiff's objection regarding the ALJ's alleged failure to qualify Zink and Brown as acceptable medical sources is overruled.

CONCLUSION

The Court has thoroughly reviewed the entire record as a whole, the briefs, the Magistrate Judge's R&R, Plaintiff's objections to the R&R, and applicable law. For the foregoing reasons, the Court respectfully overrules Plaintiff's objections and adopts and incorporates herein the Magistrate Judge's R&R as indicated above. The Commissioner's decision is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

August 31, 2020                                   s/ R. Bryan Harwell
Florence, South Carolina                      R. Bryan Harwell
                                                           Chief United States District Judge